JAMES BOND *v.* W. H. OWEN *et als.*

INTERCOURSE BETWEEN THE STATES. *Construction of act of Congress of July 13, 1861.* The act was intended to interdict intercourse between the States in rebellion and the loyal States, and not between the States of the Confederacy, which were held to constitute a government *de facto,* and were so recognized by the several departments of the government of the United States.

FROM HAYWOOD.

No record can be found.

TURNEY, J., delivered the opinion of the court.

The court charged the jury, "if the State of Tennessee, or the section where the holder lived, was in rebellion according to the terms of the President's proclamation, and free intercourse cut off, then, in that event, no legal transaction could be had between the two sections.

The bill of exchange was drawn at Brownsville, Tenn., on the 26th of March, 1862, on Bradley, Wilson & Co., of New Orleans, payable at four months, the drawer, payee, and endorser living at Brownsville.

The charge is too comprehensive a construction of sec. 5, of the act of Congress, approved July 13, 1861. The language of which necessary to be considered here is, "that whenever the President in pursuance of the provisions of the second section of the act entitled an act to provide for calling forth the

Bond *v.* Owen.

militia to execute the laws of the Union, suppress insurrection and repel invasion, and to repeal the act now in force for that purpose, approved February 28, 1795, shall have called forth the militia to suppress combinations against the laws of the United States, and to cause the laws to be duly executed, and the insurgents shall have failed to have dispersed by the time directed by the President, and when said insurgents claim to act under the authority of any State or States, and such claim is not disclaimed or repudiated by the persons exercising the functions of government in such State or States, or in the part or parts thereof in which said combination exists, nor such insurrection suppressed by said State or States, then, and in such case, it shall be lawful for the President, by proclamation, to declare that the inhabitants of such State or any section or part thereof, where such insurrection exists, are in a state of insurrection against the United States, and thereupon all commercial intercourse by and between the same and the citizens thereof and the citizens of the rest of the United States shall cease and be unlawful so long as such condition of hostility shall continue," etc.

The only power conferred upon the President by this statute is to declare a State or States, or section in insurrection or rebellion, and when he shall have done that much his authority under the act ceases. The act itself, without regard to the discretion, will or authority of the President, declares the penalty, merely qualifying the denunciation by granting to the President a restricted discretion to license certain acts

under rules and regulations prescribed by the Secretary of the Treasury. It nowhere confers upon the President (were the authority in Congress to do so conceded) the unlimited power of declaring when the war ceased, or, to employ the language of the act itself, "such condition of hostility" ceased.

The act was intended, as it plainly enacts, to interdict intercourse between the States in rebellion and the loyal States, and not between the States of the Confederacy, which was, as has been repeatedly held, a government *de facto* at least, and so repeatedly recognized to be from the beginning to the close of the war by all the governmental departments of the United States, whose arm of power was too short for a little more than four years to enforce her laws within the Confederacy, or to relieve or protect citizens loyal to the United States, but residing within the Confederate lines, and who had no alternative but to submit to the powers that were and yield obedience to their laws.

It is absurd to say that persons living within the Confederate lines could be by an act of Congress of the United States and the proclamation of the President prohibited from all commercial intercourse with each other, and among themselves; that such was not the intention of this act is made manifest by the use of the term in the prohibitory clause, "and the citizens of the rest of the United States," as well as by an utter inability to enforce a more stringent inhibitory law.

The act could apply only to the times of hostility. When the war ended and the armies of the Confed-

erate States had surrendered themselves and their arms, and had been imprisoned or paroled, a "condition of hostility" did and could no longer exist. The reason for the law ceased, and as a consequence the law itself ceased.

It was a war measure, having for its purpose the suppression of the rebellion. When the rebellion or the "condition of hostility" ceased the statute as to it expired by force of its terms.

Reverse the judgment.